UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

WENDY TOLEDO,                          )
MANUEL TOLEDO, and                     )
KAYLEE GREEN (a minor),                )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )        No.:   3:16-CV-475-TAV-DCP
                                       )
CSX TRANSPORTATION, INC., and          )
UNION TANK CAR COMPANY,                )
                                       )
            Defendants.                )


## MEMORANDUM OPINION AND ORDER

Before the Court are defendant Union Tank Car Company ("UTC")'s motions for

partial summary judgment [Doc. 44] and to amend its answer [Doc. 53].  Defendant CSX

Transportation, Inc. ("CSX"), has filed notice that it joins in UTC's summary judgment

motion [Doc. 46].  Plaintiff Wendy Toledo[1] has responded in opposition to both motions

[Docs. 51, 55], and defendants have replied [Docs. 52, 54, 56].  For the reasons explained

below, the Court will grant both of defendants' motions.

## I.      Background

The facts at issue in the instant motions are not in dispute.  This case is one of many

pending before this Court that arose out of a train derailment and resulting chemical fire

on July 1, 2015, in Maryville, Tennessee, which prompted the evacuation of thousands of

_____

[1] As explained below, defendants have moved for summary judgment solely on Wendy
Toledo's claims [Docs. 44, 46].  Thus, because the other two plaintiffs' claims are not relevant to
this opinion, the Court will refer to Wendy Toledo as "plaintiff" from this point forward.

local residents [Doc. 1 pp. 13–16].[2]  Plaintiffs here were Maryville residents at the time of the derailment [*Id.* at 11].  They have brought this lawsuit against the operator of the train, defendant CSX, and the owner of the tank car that derailed and caught fire, defendant UTC, asserting claims of negligence, battery, nuisance, negligent infliction of emotional distress, and gross negligence under Tennessee law [*Id.* at 16–30].

On February 8, 2016, plaintiff filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Tennessee [No. 3:16-bk-30300, Doc. 1].[3]  One part of the petition form—specifically, Question 33 in Schedule A/B: Property—asked plaintiff whether she had any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment," including "[a]ccidents, employment disputes, insurance claims, or rights to sue" [*Id.* at 21].  Plaintiff checked the box marked "no" [*Id.*]  Thus, the parties do not dispute that she omitted from her petition the claims she has raised against CSX and UTC in this case [*See* Doc. 45 p. 2; Doc. 51 pp. 2–3].  In an affidavit attached to her response brief, however, plaintiff submits that this omission was "an honest mistake not intended or used to gain any unfair advantage" [Doc. 51-2 ¶ 8].  Plaintiff further provides that she completed the petition after one consultation

---

[2] These are: *Tipton v. CSX Transp., Inc.*, No. 3:15-cv-311; *Hall v. CSX Transp., Inc.*, No. 3:15-cv-346; *Andies v. CSX Transp., Inc.*, No. 3:16-cv-474; *Toledo v. CSX Transp., Inc.*, No. 3:16-cv-475; *Boling v. CSX Transp., Inc.*, No. 3:16-cv-488; *Payne v. CSX Transp., Inc.*, No. 3:16-cv-489; *Beals v. CSX Transp., Inc.*, No. 3:16-cv-497; *Jaggers v. CSX Transp., Inc.*, No. 3:16-cv-498; and *Owens v. CSX Transp., Inc.*, No. 3:16-cv-499.

[3] "[I]t is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'"  *Lyons v. Stovall*, 188 F.3d 327, 332 (6th Cir. 1999) (second alteration in original) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969)).

meeting with a bankruptcy lawyer and one follow-up meeting when she returned certain documents for review [*Id.* ¶ 5]. In addition, plaintiff notes that she has only a high school education, with no formal legal training [*Id.* ¶ 3].

Plaintiffs originally filed a complaint against CSX and UTC in the Circuit Court for Blount County, Tennessee, on June 24, 2016 [Doc. 1 p. 1]. CSX then removed the case to this Court under 28 U.S.C. §§ 1441 and 1446 [*Id.*]. On July 12, the Bankruptcy Court entered an order discharging plaintiff's debts, and her case was closed on August 22 [No. 3:16-bk-30300, Docs. 19, 22]. Up to this point, plaintiff had not sought to amend her bankruptcy petition or notify the Bankruptcy Court of her claims against CSX and UTC. Meanwhile, UTC answered plaintiff's complaint in this case on August 10, but did not assert as a defense plaintiff's failure to schedule her claims against UTC in her bankruptcy petition [Doc. 16]. CSX, on the other hand, filed its answer on August 17 and expressly raised equitable estoppel as an affirmative defense [Doc. 19 ¶ 100].

Plaintiff later disclosed her pending bankruptcy petition in response to CSX's first set of interrogatories [Doc. 51-3 p. 2]. On March 14, 2017, UTC moved for summary judgment solely as to Wendy Toledo, arguing that her claims against UTC were barred by judicial estoppel because she had failed to schedule them in her bankruptcy petition [Docs. 44–45]. On March 23, CSX filed notice that it was joining in UTC's motion [Doc. 46]. Then, on April 5, the United States Trustee moved to reopen plaintiff's bankruptcy case, noting that it had been "notified about the existence of additional assets that are likely property of the bankruptcy estate" [No. 3:16-bk-30300, Doc. 23 p. 1]. The Bankruptcy

Court reopened the case that same day [No. 3:16-bk-30300, Doc. 24].[4] In addition, the bankruptcy trustee[5] has since hired plaintiff's counsel to represent the bankruptcy estate's interests in this litigation [No. 3:16-bk-30300, Doc. 32].

Plaintiff then responded in opposition to defendants' summary judgment motion, arguing that: (1) UTC had failed to assert judicial estoppel in its answer as an affirmative defense; (2) judicial estoppel is not warranted on the facts of this case; and (3) such a remedy is now moot, given the reopening of her bankruptcy case [Doc. 51]. CSX and UTC replied [Docs. 52, 54], and in response to plaintiff's first argument, UTC simultaneously filed a motion to amend its answer to include an affirmative defense of judicial estoppel [Doc. 53]. Plaintiff has now responded to that motion [Doc. 55], and UTC has replied [Doc. 56]. Therefore, UTC's motion to amend and defendants' joint motion for summary judgment are both fully briefed and ready for disposition. E.D. Tenn. L.R. 7.1(a). The Court will resolve both motions in this opinion.

---

[4] Plaintiff's response brief states that, after disclosing her bankruptcy petition in response to CSX's interrogatory, "[i]mmediate steps were taken to rectify the mistake" [Doc. 51 p. 3]. Further, in an affidavit attached to plaintiff's response brief, the bankruptcy trustee states that she "notified the United States Trustee's office of the pending litigation and asked that the case be reopened" [Doc. 51-5 ¶ 2]. However, these materials do not make clear whether it was plaintiff (or her counsel) who informed the bankruptcy trustee of this case, or whether the bankruptcy trustee learned of this case by other means. Plaintiff's response brief states only that "the [t]rustee has been notified of the claim" [Doc. 51 p. 9]. Moreover, the Court notes there was a gap of almost a month between the filing of UTC's summary judgment motion on judicial estoppel grounds and the reopening of plaintiff's bankruptcy case. The total delay might be even longer, but the record is currently unclear as to when plaintiff first filed her responses to CSX's interrogatories and, in doing so, disclosed the existence of her bankruptcy petition.

[5] The original bankruptcy trustee has been appointed to serve as interim trustee in plaintiff's reopened bankruptcy case [No. 3:16-bk-30300, Doc. 25]. For simplicity's sake, the Court will refer to this individual as "the bankruptcy trustee" throughout this opinion.

## II.     UTC's Motion to Amend

The Court will first address defendant UTC's motion for leave to amend its answer to assert an affirmative defense of judicial estoppel [Doc. 53].  For the reasons explained below, the Court will grant UTC's motion.

### A.     Standard of Review

Under Federal Rule of Civil Procedure 15, after the twenty-one-day window for amendment as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  The decision whether to grant leave rests within the district court's sound discretion.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).  Leave is generally appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

"Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."  *Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).  In making this determination, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual

allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted above, an additional basis for denying leave to amend is a "likelihood of prejudice to the opponent," after weighing "the competing interests of the parties." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). The Sixth Circuit has, however, required "at least some significant showing of prejudice to the opponent" to deny leave on this basis. *Id.* at 562. On the other hand, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001); *accord Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 153 (6th Cir. 2010); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 496–97 (6th Cir. 2001).

Undue delay is another, often related ground for denying leave. *Foman*, 371 U.S. at 182. But "[d]elay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself[,] to disallow an amendment." *Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982); *see also Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (noting that "delay alone, regardless of its length is not enough to bar it if the other party is not prejudiced" (quoting *Moore*, 790 F.2d at 560)). The court should

consider whether amendment would "[1] require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [2] significantly delay the resolution of the dispute; or [3] prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994).

### B.     Analysis

Here, UTC argues that "[t]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft*, 689 F.2d at 639.  UTC further asserts that none of the "limited circumstances" warranting denial of leave to amend are present here [Doc. 53 ¶ 4].  First, UTC argues that plaintiff received adequate notice of its judicial estoppel defense, both through CSX's answer and UTC's summary judgment motion and briefs.  Second, UTC argues that plaintiff will suffer no prejudice from amendment because this case is still in the discovery stage, with the trial not set to begin until November 5, 2018 [Doc. 57].  Third, UTC argues that amendment would not be futile because its affirmative defense of judicial estoppel has merit.  Fourth, UTC argues that it has not unduly delayed in seeking amendment, as it moved for summary judgment promptly after learning of plaintiff's bankruptcy petition and then sought leave to amend seven days after plaintiff first asserted that UTC had not pleaded this affirmative defense.  Finally, UTC argues that it has not exhibited any bad faith, nor has it repeatedly failed to cure deficiencies in past amendments.

Plaintiff responds that the Court should deny leave to amend on several grounds. First, plaintiff asserts it would be inconsistent to "hold the omission of an unsophisticated Plaintiff against her [via the judicial estoppel defense], but not hold the nearly nine month omission of an extremely sophisticated [d]efendant against it" [Doc. 55 p. 2]. Relatedly, plaintiff argues that if her attempts to correct the omission in her bankruptcy petition came too late, then that same logic would apply to UTC's belated attempt to correct its deficient answer. Second, plaintiff argues that "a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case." 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1278 (3d ed. 2002); *see also Arizona v. California*, 530 U.S. 392, 410 (2000) (noting that "affirmative defense[s are] ordinarily lost if not timely raised").

Third, plaintiff argues that UTC has exhibited bad faith and undue delay throughout this case—including in a dispute over depositions that necessitated a protective order and by seeking summary judgment. Plaintiff notes that UTC "bears the burden to show some valid reason for neglect and delay in seeking to amend its pleadings," which plaintiff contends it has not done. *Bank of Am. N.A. v. Home Lumber Co.*, No. 2:10-cv-170, 2011 WL 5040723, at *2 (N.D. Ind. Oct. 24, 2011). Fourth, plaintiff argues that she would suffer prejudice if defendant is granted leave to amend—namely, a loss of recovery for personal

injury—while defendant will not suffer any prejudice if leave is denied, as it would be in the same position it occupied before moving for summary judgment.[6]

After carefully considering the parties' positions on this issue, the Court will permit UTC to amend its answer. Plaintiff is correct that, as a general matter, failure to plead an affirmative defense results in its waiver. Wright et al., *supra*, § 1278. But "as a practical matter there are numerous exceptions to this broad rule, the most significant . . . being the rule allowing amendments to the answer under [Rule] 15(a). Simply put, Rule 15(a) allows a party to amend his pleading to assert an omitted affirmative defense . . . ." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). As such, the Court must consider whether any of the *Foman* grounds for denying leave to amend are present in this case. Otherwise, the default principle is to permit amendment. *Leary*, 349 F.3d at 905.

First, contrary to plaintiff's arguments, the Court finds that UTC has not unduly delayed in seeking amendment. While it is true that UTC moved to amend eight months after filing its original answer, UTC submits that it was unaware of plaintiff's bankruptcy petition—and thus the basis for a judicial estoppel defense—until plaintiff disclosed its existence during discovery. UTC asserts it then promptly moved for summary judgment,

---

[6] The parties also dispute whether the Sixth Circuit's decision in *Mirando v. United States Department of Treasury*, 766 F.3d 540 (6th Cir. 2014), supports UTC's motion for leave to amend. In *Mirando*, the Sixth Circuit affirmed a district court's decision to simultaneously permit the defendant to amend its answer to include an affirmative defense of judicial estoppel and grant summary judgment on that basis. *Id.* at 548. But the opinion in *Mirando* does not actually discuss the issue whether permitting leave to amend was proper, instead focusing solely on the elements of judicial estoppel. *See id.* at 545–58. It is unclear whether the plaintiff appealed on grounds of an improper amendment. Thus, while *Mirando* perhaps tacitly endorses the relief UTC seeks in its motion to amend, the Court does not find that decision particularly helpful in this case.

and while the precise timing of plaintiff's disclosure is unclear to the Court, plaintiff has not disputed this characterization. And, in any event, "delay alone, regardless of its length is not enough to bar [amendment] if the other party is not prejudiced." *Ziegler*, 512 F.3d at 786. To that end, the Court also finds that plaintiff will not be prejudiced by amendment. Most notably, because CSX properly asserted an estoppel affirmative defense (and then joined in UTC's summary judgment motion on that basis), plaintiff would have to respond to such a defense even if the Court denied UTC leave to amend. Allowing UTC to seek the same relief will not materially add to plaintiff's burden. In addition, the mere fact that UTC's defense might have merit does not constitute "prejudice" for purposes of Rule 15(a). *See Covenant Med. Ctr., Inc. v. Auto-Owners Ins. Co.*, No, 17-cv-11176, 2017 WL 4572327, at *3 (E.D. Mich. Oct. 13, 2017) ("'Prejudice' in the context of Rule 15 means more than the inconvenience of having to defend against a claim." (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000))).[7]

Furthermore, the Court finds no evidence of "bad faith or dilatory motive" on UTC's part. *Leary*, 349 F.3d at 905. Even assuming that UTC exhibited bad faith in past discovery disputes—an allegation plaintiff does not explain in significant detail—that has nothing to do with whether UTC has sought leave to amend in bad faith. *See Sun Life Assurance Co.*

---

[7] Requiring a party to defend against a new theory raised late in the litigation may, in some instances, constitute sufficient prejudice to deny leave to amend. *See, e.g.*, *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973) (holding that the district court did not abuse its discretion by "concluding that to put [the opposing party] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial"). Here, however, UTC is merely seeking to assert the same affirmative defense its co-defendant has already pleaded and will continue to assert.

*v. Conestoga Tr. Servs., LLC*, 263 F. Supp. 3d 695, 697 (E.D. Tenn. 2017) (noting that, in evaluating a Rule 15(a)(2) motion, "courts typically consider whether *the amendment* is brought in bad faith or for dilatory purposes" (emphasis added)). And, while summary judgment motions can sometimes result in a delay of court proceedings, the mere act of making such a motion obviously does not show a dilatory motive. Likewise, UTC has not repeatedly failed to cure deficiencies in past amendments. The instant motion is, after all, UTC's first request to amend its answer in this case.

Moreover, the Court disagrees with plaintiff that UTC has taken inconsistent positions in its two motions. Absent unusual circumstances, leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *see also Moore*, 790 F.2d at 562 (noting the Sixth Circuit's policy of "liberality in allowing amendments to [pleadings]"). By contrast, the stringent disclosure duties of debtors in bankruptcy "are at the very core of the bankruptcy process." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 480 n.7 (6th Cir. 2010) (quoting *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. Jan. 24, 2003)). "[T]he importance of this disclosure duty cannot be overemphasized." *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). Thus, it is not inconsistent to urge leniency in the former context and strictness in the latter.[8]

---

[8] In a footnote, plaintiff also appears to argue that amendment would be futile because judicial estoppel is not appropriate here [*See* Doc. 55 p. 3 n.1]. As discussed in Part III, however, the Court finds that defendants are entitled to summary judgment on their judicial estoppel defense. Accordingly, because this affirmative defense would necessarily survive a motion to dismiss, UTC's proposed amendment is not futile. *See Miller*, 408 F.3d at 807.

In sum, the Court finds that granting leave to amend is consistent with the "overall policy in this Circuit of resolving disputes on their merits," rather than on the minutia of procedural rules. *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000). Thus, the interests of justice require that UTC be allowed to amend its answer to assert an affirmative defense of judicial estoppel.

## III. Defendants' Motion for Partial Summary Judgment

The Court will next address defendants' motion for partial summary judgment as to the claims asserted by plaintiff Wendy Toledo [Doc. 44]. For the reasons explained below, the Court finds that defendants are entitled to summary judgment on these claims.

### A. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991)

(citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479– 80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B.    Analysis

The doctrine of judicial estoppel rests on the principle that, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). The purpose of the doctrine is "to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *see also*

*Teledyne Indus. v. NLRB*, 911 F.2d 1214, 1217–18 (6th Cir. 1990) (noting that the doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship"). "[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424–25 (6th Cir. 2005) (quoting *New Hampshire*, 532 U.S. at 750). Nevertheless, the doctrine most often applies when a party attempts to "(1) assert[] a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).

The judicial estoppel doctrine frequently arises in the context of post-bankruptcy lawsuits. Section 521 of the Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities," "a schedule of current income and current expenditures," and "a statement of the debtor's financial affairs," among other things. 11 U.S.C. § 521(a)(1)(B)(i)–(iii). A cause of action is an "asset" that must be disclosed under § 521. *Lewis*, 141 F. App'x at 424. As noted above, "debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately," as "meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Colvin*, 288 B.R. at 480–81 (quoting *In re Famisaran*, 224 B.R. 886, 891 (N.D. Ill. 1998)). "Moreover, '[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action,'" whether or not the debtor has yet filed (or will ever file) a

lawsuit. *Coastal Plains*, 179 F.3d at 208 (quoting *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)).

Several Sixth Circuit decisions have provided the framework for applying judicial estoppel in the bankruptcy context. First, in *Browning v. Levy*, the defendant argued that the plaintiff—a debtor-in-possession corporation—had failed to disclose in an earlier bankruptcy proceeding the claims now raised against the defendant. 283 F.3d at 775. The Sixth Circuit agreed that this meant the plaintiff had taken (and the court had adopted) an inconsistent position in a prior proceeding. *See id.* But this was not enough. Consistent with the doctrine's goal of precluding "cynical gamesmanship" in the judicial process, the court held that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* at 776. The court also adopted the Fifth Circuit's interpretation of inadvertence from *Coastal Plains*: A debtor's failure to disclose a cause of action in a bankruptcy proceeding is inadvertent either (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims, or (2) "where the debtor has no motive for concealment." *Id.* (citing *Coastal Plains*, 179 F.3d at 210). In *Browning*, the latter was true because the plaintiff, as a debtor-in-possession, was essentially serving as a trustee and could not profit from the undisclosed claims. *Id.*

Second, in *Eubanks v. CBSK Financial Group, Inc.*, the defendant moved to dismiss the plaintiffs' suit because they had failed to disclose any claims against the defendant in their bankruptcy case. 385 F.3d 894, 897 (6th Cir. 2004). The district court agreed, but the Sixth Circuit held that this was not a proper case for judicial estoppel. *Id.* at 899. While

the plaintiffs had both knowledge of their potential claim and a motive to conceal their assets from the bankruptcy court, the court found no evidence of "bad faith or an attempt to mislead the court." *Id.* at 898. Instead, the plaintiffs had taken "constant affirmative actions clearly establish[ing] a desire to apprise the court of the pending claim." *Id.* at 899 n.2. Specifically, they had notified the bankruptcy trustee of their claim, repeatedly asked the trustee whether he intended to prosecute the claim on the estate's behalf, sought a status conference regarding the claim, moved to substitute the trustee for themselves in their suit, and (after the defendant moved for dismissal) amended their bankruptcy petition to disclose the claim. *Id.* at 895–97. These efforts validated "the argument that the claim's omission on the schedules was merely inadvertent." *Id.* at 899.

Third, in *Lewis v. Weyerhaeuser Co.*, the plaintiff alleged that the defendant had failed to promote and then fired her for discriminatory reasons. 141 F. App'x at 421. The plaintiff filed a bankruptcy petition two months after her termination, but she never disclosed any claims against the defendant (or even the fact that she had received wages from the defendant). *Id.* at 421–22. Then, one month after confirmation of her bankruptcy plan, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") that resulted in the instant suit. *Id.* at 422. The district court granted summary judgment on grounds of judicial estoppel, and the Sixth Circuit affirmed. *Id.* at 423. The court found that the plaintiff knew of her discrimination claim, given the timeline of events, and "had a motive to conceal her claim since [i]t is always in a [bankruptcy] petitioner's interest to minimize income and assets." *Id.* at 426 (internal quotation marks omitted).

The court also found that the plaintiff's actions "pale[d] in comparison to the actions taken by the plaintiffs in *Eubanks*," as she had made no attempt to amend her bankruptcy petition or notify the bankruptcy court of her claim. *Id.* at 427.

Finally, in *White v. Wyndham Vacation Ownership, Inc.*, the Sixth Circuit affirmed this Court's decision to apply judicial estoppel under circumstances similar to this case. 617 F.3d at 484, *aff'g* No. 3:08-cv-405, 2009 WL 1074800 (E.D. Tenn. Apr. 21, 2009). The plaintiff in *White* filed a sexual harassment complaint against the defendants with the EEOC. *Id.* at 474. The EEOC issued her a notice of right to sue, and one month later, she filed a bankruptcy petition that did not disclose her harassment claim. *Id.* The bankruptcy court later confirmed the plaintiff's bankruptcy plan, and one day later, the plaintiff filed suit. *Id.* at 475. In reviewing this Court's grant of summary judgment, the Sixth Circuit found that the plaintiff had asserted an inconsistent position in her bankruptcy case, which the bankruptcy court had adopted by ordering payments from the estate on the basis of her representations. *Id.* at 479. Next, the court found that the plaintiff had knowledge of her harassment claim—given that she had already filed an EEOC complaint—and that she, like any consumer bankruptcy petitioner, had a motive to conceal her assets. *Id.* Lastly, the Sixth Circuit concluded that the plaintiff's "limited and ineffective attempts to correct her initial misfiling" were insufficient to show an absence of bad faith. *Id.* at 480. Specifically, the plaintiff had filed an application with the bankruptcy court to employ counsel for her harassment claim, but this application did not detail the nature of the suit or address her earlier omission. *Id.* at 481. The plaintiff also submitted an affidavit alluding to an earlier

conversation about her claim, but once more, she "provided no evidence as to what, exactly, was discussed, whom it was discussed with, or whether the omission from the initial filings was discussed or emphasized." *Id.* at 480. Moreover, the plaintiff had listed a different claim in her bankruptcy petition and had waited until the day after her plan-confirmation hearing to file suit—thus suggesting that the nondisclosure of her harassment claim was intentional. *Id.* at 482.

Here, the Court finds that plaintiff is judicially estopped from asserting any claims against defendants that she failed to disclose in her bankruptcy case. At the outset, there does not appear to be any dispute that that the two threshold conditions for judicial estoppel are present. *Browning*, 283 F.3d at 775. Plaintiff asserted a position in her bankruptcy case contrary to the position she has taken in this case—namely, that she has viable claims against defendants under Tennessee tort law [*Compare* Doc. 1 pp. 16–30, *with* No. 3:16-bk-30300, Doc. 1 p. 21]; *see also Lewis*, 141 F. App'x at 425 ("[P]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel."). And the Bankruptcy Court adopted that contrary position by confirming plaintiff's bankruptcy plan, discharging her debts, and closing her case without accounting for any claims against defendants [No. 3:16-bk-30300, Docs. 19, 22]; *see also Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (holding that when a bankruptcy court "approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that . . . is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position").

The Court further finds that defendants have shown that plaintiff's omission was not the product of mere "mistake or inadvertence." *Browning*, 283 F.3d at 776. First, the Court finds that plaintiff knew of the factual basis for her claims at the time her bankruptcy case began. The harms plaintiff allegedly suffered—i.e., an interference with her property interests on July 1, 2015 (the date of the evacuation), exposure to the chemical acrylonitrile on that date, and a miscarriage on July 31, 2015—all occurred at least six months before she filed for bankruptcy [Doc. 1 pp. 24–25, 29]. Yet plaintiff filed her Chapter 13 petition without noting any claims arising from these alleged injuries. Second, both this Court and the Sixth Circuit have repeatedly held that consumer debtors in bankruptcy always have a motive to conceal income and assets. *See White*, 2009 WL 1074800, at *5 ("[I]t is always in a Chapter 13 petitioner's interest to minimize income and assets." (quoting *Lewis*, 141 F. App'x at 426)). Unlike the debtor-in-possession in *Browning*, plaintiff stood to profit from concealing her claims in this case from her creditors in her bankruptcy case—i.e., she would preserve any potential recovery for herself. *See New Hampshire*, 532 U.S. at 751 (noting that one factor in applying judicial estoppel is "whether the party seeking to assert an inconsistent position would derive an unfair advantage").

Third, the Court finds that plaintiff did not ward off any suspicion of bad faith by attempting to inform the Bankruptcy Court of her claims against defendants. The only action plaintiff seems to have taken to correct her earlier omission was to apprise the bankruptcy trustee of her claims *after* defendants moved for summary judgment on grounds of judicial estoppel. Plaintiff herself does not suggest any other attempts at redress. This

falls far short of the "constant affirmative actions clearly establish[ing] a desire to apprise the court of the pending claim" that the Sixth Circuit found in *Eubanks*. 385 F.3d at 899. Before defendants moved for summary judgment, plaintiff did not, for example, discuss the possible inclusion of her claims with counsel, the bankruptcy trustee, or the U.S. Trustee, she never sought to have the trustee prosecute her claims on the estate's behalf, and she never sought to amend her bankruptcy petition. *See id.* at 895–97.

Indeed, plaintiff's efforts fall short of even the "limited and ineffective attempts to correct [the] initial misfiling" in *White*. 617 F.3d at 480. There, the plaintiff had provided the bankruptcy court with at least partial notice of her claim via her application to employ counsel and had offered evidence of an earlier conversation in the bankruptcy proceedings concerning her claim. *Id.* at 480–81. This Court and the Sixth Circuit found such actions insufficient in light of the other facts of the case—yet even those minimal efforts are absent here. Plaintiff's efforts in this case are more akin to those of the plaintiff in *Lewis*, who filed her EEOC complaint one month after confirmation of her bankruptcy plan and never made any attempt to inform the bankruptcy court of her discrimination claim before the defendant moved for summary judgment. 141 F. App'x at 421–22. Likewise, plaintiff brought this action only four months after filing her Chapter 13 petition, and her bankruptcy case was still pending at that time. Notably, even if plaintiff originally believed she was not required to list potential claims in her petition, as she now claims [Doc. 51-2 ¶ 4], she took no action to amend her petition or notify the bankruptcy court of her claims at the time

she filed this suit. She remained silent even when that court entered an order discharging her debts three weeks later [No. 3:16-bk-30300, Doc. 19].[9]

Moreover, the fact that the Bankruptcy Court has now reopened plaintiff's case and permitted the bankruptcy trustee to hire plaintiff's counsel to represent the estate's interests in this litigation does not make the application of judicial estoppel moot. Plaintiff argues that, because of these factors, "the present case is already at a much more advanced stage than other judicial estoppel cases," thus "mak[ing] a judicial estoppel determination unnecessary" [Doc. 51 p. 5]. However, the plaintiff in *White* likewise filed an amended bankruptcy petition disclosing her harassment claim only after the defendants moved for summary judgment. 2009 WL 1074800, at *2. And there, the plaintiff had even applied for the bankruptcy court to hire counsel for her harassment claim *before* the defendants filed their summary judgment motions. *Id.* Nonetheless, this Court found these belated efforts insufficient to show inadvertence or good faith. *Id.* at *7. The Court noted that "[a]llowing [a plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that the debtor should consider disclosing potential assets only if he is caught concealing them." *Id.* (quoting *Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 859 (W.D. Tenn. 2005)). "This so-called remedy would only diminish the necessary incentive to provide the

---

[9] Likewise, while plaintiff avers she originally believed any claim against defendants would have been a wrongful death claim on her deceased child's behalf, not her own [Doc. 51-2 ¶ 7], the inaccuracy of this belief would have been apparent by the time she filed suit on her own behalf.

bankruptcy court with a truthful disclosure of the debtor['s] assets." *Id.*[10] The Sixth Circuit

approved this reasoning. *See White*, 617 F.3d at 481 (noting a contrary holding "would

encourage gamesmanship, since [the plaintiff] only fixed her filings after the opposing

party pointed out that those filings were inaccurate"). [11]

---

[10] As such, the fact that plaintiff may no longer be able to derive an "unfair advantage" from her inconsistent positions—one factor noted by the Supreme Court in *New Hampshire*, 531 U.S. at 751—is not dispositive. Otherwise, any party accused of concealing a cause of action in a prior bankruptcy proceeding could defeat judicial estoppel simply by filing an amended petition.

[11] In support of her mootness argument, plaintiff cites to cases from the Middle District of Florida and the Alabama Supreme Court where the plaintiff moved to substitute the bankruptcy trustee as the real party in interest, thus allowing the case to proceed. *See Wheeler v. Fla. Dep't of Corr.*, No. 3:04-cv-1147, 2006 WL 2321114, at *7 (M.D. Fla. Aug. 9, 2006) (substituting the trustee for the plaintiff and thus finding issues of judicial estoppel to be moot); *Hamm v. Norfolk S. Ry. Co.*, 52 So. 3d 484, 492–93 (Ala. 2010) (holding that the trial court erred in refusing to substitute the trustee as the real party in interest). Such a remedy is permissible in certain cases, and principles of judicial estoppel do not necessarily apply equally to a debtor and a bankruptcy trustee. Indeed, the Sixth Circuit has recently held that "a debtor's errors or omissions should not be attributed to the trustee for purposes of judicial estoppel." *Stephenson v. Malloy*, 700 F.3d 265, 271–72 (6th Cir. 2012). However, the court in *Stephenson* did not resolve the question whether substitution of the trustee serves as a panacea for curing judicial estoppel in the bankruptcy context. *See id.*; *see also In re Johnson*, 345 B.R. 816, 819 n.1, 825 n.7 (Bankr. W.D. Mich. 2006) (in a pre-*Stephenson* decision, holding that the facts of the case would warrant judicial estoppel even if the court were to substitute the bankruptcy trustee, who had actively participated in the case, as the real party in interest).

The Court need not reach that question in this case, as it does not appear that plaintiff is actually moving to substitute the trustee for herself. Plaintiff refers to the *Wheeler* and *Hamm* decisions as being merely "instructive" as to why defendants' summary judgment motion is moot [Doc. 51 p. 8], and the introduction and conclusion sections of her brief do not request substitution of the trustee as an alternative remedy [*see id.* at 1–2, 10]. And, outside of producing an affidavit that does not address this issue [Doc. 51-5], the trustee herself has not appeared in this case, moved to be substituted for plaintiff, or expressed a desire to litigate plaintiff's claims on the bankruptcy estate's behalf. Thus, the Court will decline to substitute the trustee as the real party in interest without a clear indication whether the parties would be amenable to that solution. Of course, were the Court to substitute the trustee, any recovery on plaintiff's claims would be limited to "the amount necessary to satisfy the claims of creditors and to pay any expenses related to reopening the bankruptcy proceeding." *Hamm*, 52 So. 3d at 498; *accord Parker's Wendy Int'l, Inc.*, 365 F.3d 1268, 1273 n.4 (11th Cir. 2004).

Finally, the mere fact that plaintiff lacks formal legal training or post-high school education does not mean that her omission was inadvertent. The Court notes that, even assuming plaintiff herself incorrectly but honestly believed that she did not need to disclose her claims against defendants in her bankruptcy case, plaintiff was represented by counsel at the time she filed her bankruptcy petition. Indeed, plaintiff admits that she met once with counsel to discuss her case and then, after filling out the petition herself, met with counsel again to review the paperwork before filing it [Doc. 51 p. 3]. In *Lewis*, the Sixth Circuit rejected the plaintiff's argument "that she relied in good faith on the advice of her attorney's paralegal" in not disclosing potential claims. 141 F. App'x at 427. In so holding, the *Lewis* court relied on the Supreme Court's decision in *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962), "for the general proposition that a litigant is bound by the errors of his or her attorney." 141 F. App'x at 427. Thus, to the extent plaintiff's omission was due to the ignorance or carelessness of counsel rather than her own gamesmanship, she is still estopped from asserting claims she failed to disclose in her bankruptcy case.

Therefore, the Court holds that judicial estoppel is appropriate in this case and that defendants are entitled to summary judgment on plaintiff's claims against them.

## IV.    Conclusion

Accordingly, for the reasons explained above, the Court **GRANTS** UTC's motion for leave to amend [Doc. 53] and defendants' joint motion for partial summary judgment

on all claims asserted by plaintiff Wendy Toledo [Doc. 44].  The claims of plaintiffs Manuel Toledo and Kaylee Green, however, shall remain pending before this Court.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE