UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MANUEL TOLEDO and )
KAYLEE GREEN (minor), )
)
Plaintiffs, )
)
v. ) No.: 3:16-CV-475-TAV-DCP
)
CSX TRANSPORTATION, INC. )
)
Defendant. )

**MEMORANDUM OPINION**

This civil action is before the Court on defendant's motion for summary judgment [Doc. 71]. Plaintiff responded in opposition to defendant's motion [Doc. 75] and defendant replied [Doc. 76]. The Court has carefully considered the matter and, for the reasons stated below, will grant defendant's motion for summary judgment on all claims.

## I.    Background

This case is one of many pending before this Court that arose out of a train derailment and resulting chemical fire on July 1, 2015, in Maryville, Tennessee, which prompted the evacuation of thousands of local residents [Doc. 1 pp. 13-16].[1] Plaintiffs here were Maryville residents at the time of derailment and allege damages based on claims of

---

[1] These are: Tipton v. CSX Transp., Inc., No. 3:15-cv-311; Hall v. CSX Transp., Inc., No. 3:15-cv-346; Andies v. CSX Transp., Inc., No. 3:16-cv-474; Toledo v. CSX Transp., Inc., No. 3:16-cv-475; Boling v. CSX Transp., Inc., No. 3:16-cv-488; Payne v. CSX Transp., Inc., No. 3:16-cv-489; Beals v. CSX Transp., Inc., No. 3:16-cv-497; Jaggers v. CSX Transp., Inc., No. 3:16-cv-498; and Owens v. CSX Transp., Inc., No. 3:16-cv-499.

negligence, gross negligence, negligent infliction of emotional distress, and battery [*Id*. at 6-20].

### A.    Factual History

In their complaint, plaintiffs allege that on June 1, 2015, defendant CSX Transportation, Inc. ("CSX") was operating a train consisting of two locomotives, forty-five loaded rail cars, and twelve empty rail cars, travelling from Cincinnati, Ohio to Waycross, Georgia [Doc. 1 ¶¶ 11, 14].  Twenty-seven of the railcars contained hazardous substances—including nine that carried acrylonitrile, a classified Class 3 hazardous substance [*Id.* ¶¶ 13, 14].

Close to midnight, a tank car carrying acrylonitrile (the "Tank Car") derailed just north of Singleton Station Road crossing in Maryville, Blount County, Tennessee [*Id.* ¶¶ 12, 15].  The train then dragged the derailed Tank Car for nine miles, during which time the Tank Car caught fire [*Id.* ¶ 15].  After nine miles, CSX personnel stopped the train near Old Mount Tabor Road in Maryville, Tennessee [*Id.*].  Plaintiffs allege that the Tank Car derailed because one of its wheel-roller bearings failed due to overheating (the "Incident Bearing") [*Id.* ¶ 16].  Plaintiffs further allege that either the nearest hot-bearing detector on the track failed to detect the problem or CSX personnel failed to heed the detector's warning [*Id.* ¶ 17].  In addition, plaintiffs allege that CSX personnel failed to keep a proper lookout , which prevented them from noticing the derailed Train Car and stopping it before it caught fire [*Id.* ¶ 18].

Plaintiffs submit that the burning acrylonitrile in the Tank Car produced hydrogen cyanide, a harmful and potentially fatal gas [*Id.* ¶ 13]. A CSX hazardous materials team did not arrive on the scene for 2.5 hours, and CSX ultimately allowed the fire to burn for 20 hours [*Id.* ¶¶ 19, 20]. Plaintiffs allege that the fire emitted a dense cloud of toxic and noxious smoke, fumes, and vapors into the air for the duration of its burn, prompting an evacuation of over 5,000 nearby residents, which lasted from July 2, 2015, until the evening of July 3, 2015 [*Id.* ¶¶ 20, 25].

**B.      Procedural History**

On June 24, 2016, plaintiffs Wendy Toledo, Manuel Toledo, and Kaylee Green (minor) filed a complaint against defendants CSX and Union Tank Car Company ("UTC") in the Circuit Court for Blount County, Tennessee, Case No: L-19343 [Doc. 1]. Plaintiffs asserted claims of negligence, gross negligence, negligent infliction of emotional distress, battery, and nuisance [*Id.*]. Defendant CSX then removed the case to this Court under 28 U.S.C. §§ 1441 and 1446 on July 27, 2016 [*Id.*].

On February 3, 2017, plaintiffs voluntarily dismissed their nuisance claims, without prejudice, against both defendants [Doc. 43]. On March 14, 2017, defendant UTC filed a motion for partial summary judgment solely as to plaintiff Wendy Toledo's claims, arguing that her claims against UTC were barred by judicial estoppel because she had failed to schedule them in a separate bankruptcy petition that she had filed in February 8, 2016 [Docs. 44–45; No. 3:16-bk-30300; Doc. 1]. On March 23, 2017, CSX filed notice that it was joining in UTC's motion [Doc. 46]. On March 28, 2018, this Court granted

defendants' motion for summary judgment solely as to plaintiff Wendy Toledo, finding her judicially estopped from asserting any claims against defendants that she had failed to disclose in her bankruptcy case [Doc. 63].

On June 25, 2018, defendant UTC was dismissed as a party to this case [Doc. 66]. On June 29, 2018, the bankruptcy trustee for the bankruptcy estate of Wendy Toledo ("bankruptcy trustee") filed a motion to intervene, or in the alternative, substitute as a real party in interest, as well as a motion for reconsideration of the Court's order granting summary judgment on all claims asserted by plaintiff Wendy Toledo [Doc. 68]. The Court did not find these motions timely, and they were therefore denied [Doc. 83]. While these motions were pending, defendant filed a motion for summary judgment on June 29, 2018 [Doc. 71]. Plaintiffs responded in opposition on July 20, 2018, [Doc. 75] and defendant replied to plaintiffs' response on March 27, 2018 [Doc. 76].

## II.     Defendant's Motion for Summary Judgment

Defendant moves the Court to dismiss all of plaintiffs' claims, arguing that there is no genuine dispute as to any material facts and therefore it is entitled to judgment as a matter of law [Docs. 72, 76]. Plaintiffs respond in opposition, arguing that genuine disputes of material fact do exist and thus summary judgment is not warranted [Doc. 75]. The Court will analyze each of defendant's arguments in turn.

### A.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th

Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under

Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."

*Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn.

1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of

a particular element, the nonmoving party must point to evidence in the record upon which

a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve

facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining

whether sufficient evidence has been presented to make the issue of fact a proper question

for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth

of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft

of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–

80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining

whether there is a need for a trial—whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

> **B.      Plaintiffs' Negligence and Gross Negligence Claims**

To succeed on a claim of negligence plaintiffs must demonstrate that defendant's

actions were a cause in fact of plaintiffs' injuries.  Under Tennessee law,[2] a claim for

negligence must show: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct

falling below the applicable standard of care amounting to a breach of that duty; 3) an

injury or loss; 4) causation-in-fact; and 5) proximate, or legal cause." *Borne v. Celadon*

*Trucking Service, Inc.*, 532 S.W.3d 274, 300 (Tenn. 2017) (quoting *King v. Anderson Cnty.*,

419 S.W.3d 232, 246 (Tenn. 2013).   Additionally, "to prevail on a claim of gross

negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then

prove that the defendant acted 'with utter unconcern for the safety of others, or… with such

a reckless disregard for the rights of others that a conscious indifference to consequences

is implied in law.'" *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003)

(quoting *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998).

Causation in fact is therefore a necessary component of both negligence and gross

negligence claims under Tennessee law.  *See Lancaster v. Montesi*, 390 S.W.2d 217, 220

(Tenn. 1965) (if… defendant's… conduct… was not a factor in causing plaintiff's damage,

---

[2] A federal court exercising diversity jurisdiction over state-law claims must apply the substantive law of the state in which it sits.  *See Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 894 (6th Cir. 1997) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

that ends the matter"); *Drewry v. County of Obion*, 619 S.W.2d 397, 398 (Tenn. Ct. App. 1981) ("[P]roof of negligence without proof of causation is nothing."). To prove causation in fact, plaintiffs must establish the cause and effect relationship between defendant's conduct and plaintiffs' loss. *Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997).

Defendant asserts that plaintiffs are unable to point to any evidence in the record showing that the train derailment was a cause-in-fact of their injuries [Doc. 72 p. 9]. They first rely on expert testimony[3] and a dispersion model to demonstrate that plaintiffs' house, where plaintiffs were at the time of the derailment, was outside of the geographic range that any contaminants could have traversed during the course of the burn [Doc. 71-1]. Defendant further argues that summary judgment is appropriate because plaintiffs have failed to introduce sufficient evidence, or indeed any evidence, linking their claims of injury to the train derailment [Doc. 72 p. 11]. They have submitted their own evidence of plaintiffs' medical records to demonstrate that plaintiffs' alleged injuries were not the result of the train derailment [Docs. 70, 76-1].

---

[3] Plaintiffs briefly argue in their Response to defendant's Motion for Summary Judgment that defendant's expert witness, William Bullock, is unqualified to be an expert witness and should not be allowed to testify as such [Doc. 75 pp. 7-8]. The Court notes that the Scheduling Order in this case provides that the parties must file *Daubert* motions to request a hearing on the expert's reliability no later than ninety days before trial "or they will be deemed waived." [Doc. 57 p. 3]. Plaintiffs' written objections were included in a response, not a motion, and the deadline for bringing such a motion has passed. Accordingly, the Court finds plaintiffs have waived any objections to Billy Bullock's qualifications. Furthermore, the Court notes that Mr. Bullock was allowed to testify as an expert witness in a sister case before this Court, Tipton v. CSX Transp., Inc., No. 3:15-cv-311.

As noted above, to survive a motion for summary judgment, once the moving party has presented sufficient evidence to support their motion, the burden shifts to the nonmoving party to point to evidence in the record upon which a reasonable finder of fact could decide in its favor. *Anderson*, 477 U.S. at 248. Plaintiffs have failed to do so. Assuming, without deciding, that defendant owed plaintiffs a duty of care and breached it, plaintiffs' claims still must fail because they have not pointed to any evidence demonstrating that defendant's breach caused their alleged injuries. In their response, plaintiffs state that they have "presented actual expert opinions from their medical providers that show it is clear that they were, in fact, injured as a result of the subject incident" [Doc. 75 p. 7]. However, plaintiffs have cited nothing from the record demonstrating such proof, and the Court has been unable to locate any such evidence.

Under Rule 56(c)(3) for summary judgment "the court need consider only the cited materials, but it may consider other materials in the record." There are only two medical records in the record, both submitted by defendant [Docs. 70, 76-1]. Neither is enough for plaintiffs to avoid summary judgment.

The first is a medical record for plaintiff Kaylee Green, which shows that she was admitted to Blount Memorial Hospital on July 3, 2015, two days after the train derailment [Doc. 70]. This is the only evidence that would arguably support Kaylee Green's claims. However, the record does not show that she suffered any injury due to the train derailment. Rather, it only states that she was treated for a bug bite [*Id.*]. The Court fails to see any

cause and effect relationship between the train derailment and a bug bite, and plaintiffs have not been forthcoming with an explanation. Summary judgment is thus appropriate as plaintiff failed to produce any evidence of injuries and associated damages caused by defendant's negligence. Because causation is an essential element of negligence and gross negligence, all claims arising under these theories must fail.

The second medical record concerns plaintiff Manuel Toledo's visit to Peninsula Behavioral Health on August 16, 2016, over a year after the train derailment occurred [Doc. 76-1]. This record states that plaintiff Toledo "reports that he is having a great deal of difficulty with sleep and with anxiety," but never mentions the train derailment and instead discusses plaintiff's long history of trauma and childhood abuse [*Id.*]. Apart from this medical record, plaintiff appears to argue that his sworn interrogatory is sufficient to establish causation as to his injuries [Doc. 75 p. 5]. Particularly, plaintiff points to his statement that on the night of the police evacuation of plaintiffs' residence he "recalls experiencing respiratory problems and … chest pains" [Doc 75-1 pp. 5-6, 9].

Summary judgment is also appropriate on plaintiff Manuel Toledo's claims for damages arising under theories of negligence and gross negligence. The medical records and sworn interrogatory of plaintiff Manuel Toledo are insufficient to survive a Rule 56 motion. First, Toledo's medical records from Peninsula Behavioral Health do not provide any evidence that plaintiff suffered any physical injuries, much less physical injuries caused by the train derailment, which took place over a year before his visit. Instead, these

records Plaintiff Toledo asserts anxiety and sleep problems [Doc. 76 p. 2]. However, no evidence indicates that these injuries stem from the train derailment. Rather, the record shows these problems were discussed in relation to his history of trauma and childhood abuse [*Id.*]. Plaintiff's responses in his interrogatory are also insufficient to survive summary judgment. His recollection of experiencing chest pains, taken alone, should be considered a mere allegation that does not establish a viable claim for physical damages.

Under Rule 56, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Here, defendants have pointed to evidence in the record that would negate plaintiffs' element of causation. Plaintiffs have not responded with any evidence linking their alleged injuries to the derailment. Therefore, summary judgment is appropriate on all claims arising under theories of negligence and gross negligence.

### C. Plaintiffs' Battery Claim

To prevail on a civil battery claim under Tennessee law plaintiffs must show that the defendant "intentionally committed an act that resulted in a harmful or offensive contact." *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at \*4 (Tenn. Ct. App. July 10, 2017). Intent for battery "is not an intent to cause harm. It is an intent to do the act that causes the harm." *Doe v. Andrews*, 275 F.Supp.3d 880, 887 (M.D. Tenn. 2017) (quoting Tenn. Prac. Pattern Jury Inst. 8.02).

Plaintiffs argue that the "acts" at issue here are defendant's decision to keep operating the train the night of the derailment when railroad employees first thought they might have seen sparks, and CSX's alleged decision to delay identifying the substance in the burning tank car to authorities [Doc. 75 p. 12-13]. Defendants maintain that the "act" at issue is the train derailment, and that it would be absurd to suggest a railroad company intends to derail its own train cars [Doc. 72 p. 19].

The Court need not resolve this disagreement, because under either scenario plaintiffs have failed to point to evidence in the record showing that these acts resulted in harmful or offensive contact to themselves. In their complaint, plaintiffs allege that "as a direct and proximate result of Defendants' conduct, the toxic and noxious smoke caused an unwanted, harmful and offensive contact with Plaintiffs' bodies, both on the skin and through inhalation of the toxic fumes" [Doc. 1 p. 23]. As mentioned, there are two medical records in the record and plaintiff Manuel Toledo's interrogatory statements wherein he "recalls experiencing respiratory problems and … chest pains" when being evacuated from his home [Doc 75-1 pp. 5-6]. Defendant responded to these allegations with an affidavit from William Bullock, an employee who was on the ground the night of the derailment acting as defendant's Health & Safety Officer [Doc. 71-1]. Bullock asserts that based on personal observation, National Weather Service wind monitoring, dispersion modeling conducted at the time of the derailment by GHD[4] and the U.S. Environmental Protection

_____

[4] GHD is an environmental engineering firm hired by defendants to provide technical support during the derailment.

Agency ("EPA"), and air monitoring results obtained by GHD, the EPA, and the Tennessee National Guard Civil Support Team, it would have been physically impossible for plaintiffs, located in their home at the time of the derailment, to have been exposed to any smoke or gases due to the accident [Doc. 71-1 ¶¶ 12-19].[5]

The evidence submitted by defendant negates the causation element of plaintiffs' battery claims. The burden thus shifted to plaintiffs to point to evidence in the record upon which a reasonable finder of fact could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs fail to do so. Even viewing the evidence in the light most favorable to plaintiffs, the two medical records do not show that plaintiffs Kaylee Green and Manuel Toledo suffered any physical injury as a result of the derailment. As noted above, Kaylee Green was only treated in the hospital for a bug bite, and Manuel Toledo's record, documenting emotional injuries reported over a year after the derailment, does not contain any reference to physical injuries [Docs. 70, 76-1]. Plaintiff Toledo's allegation that he experienced chest pains and respiratory problems, without more, is insufficient. Because plaintiffs have not pointed to specific facts showing that a genuine issue exists for trial, summary judgment is proper on all of plaintiffs' battery claims.

### D.     Plaintiff's Negligent Infliction of Emotional Distress Claim

Negligent infliction of emotional distress ("NIED") actions are analyzed under the general negligence approach and plaintiffs must therefore "present material evidence as to

---

[5] Attached to Bullock's affidavit are also exhibits to support these assertions, including maps, local climatological data, and dispersion models [Doc. 71-1 pp. 7-10].

each of the five elements of general negligence—duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause." *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). NIED claims are categorized as "standalone," "parasitic," or "bystander." *See Rye v. Women's Care Cir. Of Memphis, MPLLC*, 477 S.W.3d 235, 270 (Tenn. 2015). However, "actions for negligent infliction of emotional distress (including all three subspecies of negligent infliction: stand-alone, parasitic, and bystander) require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct." *Rye*, 477 S.W.3d at 270 (emphasis and internal quotation marks omitted). A serious or severe mental injury is one that "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 210 (Tenn. 2012). The court in *Rogers* listed six nonexclusive factors from which to evaluate whether a plaintiff is "unable to cope with the mental stress engendered," including:

(1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
(2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
(3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;

(4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
(5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
(6) In certain instances, [evidence of] the extreme and outrageous character of the defendant's conduct…

*Rye*, 477 S.W.3d at 270-71.

Based on these factors, plaintiffs have failed to point to evidence in the record sufficient for a reasonable jury to conclude that they are unable to cope with the mental stress engendered by defendant's conduct.

Plaintiff Kaylee Green has submitted no evidence that she has suffered emotional or mental distress, other than an indirect reference in plaintiff Toledo's interrogatory wherein he stated that firemen "frightened the entire household" when they arrived on the night of July 1, 2015 to facilitate evacuation of the residence [Doc. 75-1 p. 5]. The Court does not find this solitary statement to satisfy any of the nonexclusive factors set forth by the court in *Rogers*. A single line in an interrogatory by a co-plaintiff stating that the household generally was frightened by the evacuation process, without more, is insufficient evidence to make the issue a proper question for the jury. This is a mere allegation that plaintiffs do not even directly cite to argue that plaintiff Green suffered emotional injuries. In fact, they do not directly address how plaintiff Green suffered any emotional injuries at all. Plaintiff has not alleged any psychological or physiological symptoms arising from this fright, nor that she sought medical treatment due to the experience. Moreover, the entire period of evacuation lasted no more than two nights, and plaintiff does not allege fright for

any period other than the initial removal [Doc. 75-1 p. 5]. Based on this analysis, the Court finds that plaintiff Green has not demonstrated a serious or severe mental injury required for an NIED claim.

Similarly, plaintiff Manuel Toledo has also failed to set forth evidence sufficient to satisfy the six factor inquiry set out in *Rogers*. Although plaintiff Toledo's medical records from Peninsula Behavioral Health do refer to problems with sleep and anxiety, which are applicable to several of the *Rogers* factors, plaintiff Toledo fails to demonstrate that these injuries resulted from defendant's conduct. *See Rye*, 477 S.W.3d at 270. As discussed before, these records do not mention the train derailment at all but rather discuss a long history of trauma and childhood abuse, were recorded at an appointment held over a year after the derailment, and otherwise do not link plaintiff's emotional distress to the train derailment in any way. Even if these medical records were sufficient to demonstrate a serious or severe mental injury, they are not sufficient to demonstrate that defendant caused such an injury. Therefore, plaintiff Toledo's medical records from Peninsula Behavioral Health are not relevant for the purposes of a *Rogers* inquiry and should not be considered as evidence for his NIED claim.

Moreover, Plaintiff Toledo's interrogatory response is also insufficient to satisfy a NIED claim. His response states that he was frightened by the evacuation process on July 1, 2015, and that he recalls experiencing respiratory problems, chest plains, and general

emotional disturbances [Doc. 75-1].  These allegations are insufficient.  First, experiencing

temporary fright due to an evacuation fails under the *Rogers* factors for the same reasons

discussed above with Plaintiff Kaylee Green.  Second, the respiratory problems and chest

pains appear to be physical symptoms that plaintiff Toledo alleges were caused by smoke

or gas from the derailment, and therefore are not symptoms that should be evaluated with

respect to his NIED claim.  To the extent that they are associated with his NIED claim,

along with his claim of general emotional distress, plaintiff Toledo does not support these

alleged injuries with any other evidence.  Temporary chest pains and breathing problems

caused by the fright of evacuation do not rise to the severity or seriousness of distress

required by *Rogers*, and allegations of general emotional distress, without any information

on psychological of physiological side effects, medical treatment, or duration and intensity,

are insufficient. Summary judgment is therefore appropriate.

      **E.**      **Plaintiffs' Claims for Punitive Damages**

Plaintiffs cannot assert a punitive damages claim in Tennessee absent a viable,

underlying cause.  *Goodale v. Langenberg*, 243 S.W.3d 575, 585 (Tenn. Ct. App. 2007)

("There can be no cause of action for punitive damages alone without 'actual damages'."

(quoting *Hutchison v. Pyburn*, 567 S.W.2d 762, 765 (Tenn. Ct. App. 1977))).  As explained

above, defendant is entitled to summary judgment on plaintiffs' underlying claims of

negligence, gross negligence, negligent infliction of emotional distress, and battery.[6] Because plaintiff asserts no viable underlying claim, punitive damages are inappropriate here.

## III.    Conclusion

For the reasons discussed above, the Court will **GRANT** defendant's motion for summary judgment on plaintiffs' claims of negligence, gross negligence, negligent infliction of emotional distress, and punitive damages.

ORDER ACCORDINGLY.

> s/ Thomas A. Varlan
> CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs assert that even if this Court were to find summary judgment appropriate on all claims outlined in defendant's motion, punitive damages would still be appropriate based on other, unaddressed negligence claims housed in plaintiffs' Complaint [Doc. 75 p. 13]. Plaintiffs do not identify which, exactly, of their negligence claims defendant are left unaddressed. The complaint states, "Defendants' negligence is the direct and proximate cause of damages to Plaintiffs in the form of personal injury, loss of income, out of pocket expenses, loss of use and enjoyment of property, aggravation and inconvenience, and fear, anxiety and mental anguish" [Doc. 1 p. 32]. As discussed above, summary judgment is appropriate on all of plaintiffs' claims for emotional and physical injury. Plaintiffs also earlier voluntarily dismissed any nuisance claims regarding use and enjoyment of their property [Doc. 43]. Plaintiffs have submitted no evidence demonstrating loss of income or out of pocket expenses. Plaintiffs have not stated with specificity which of their claims they rely on to make the assertion that viable claims still exist and the Court therefore finds summary judgment on all claims appropriate.